## Speca, Appellant, et al. *v.* Bucci Construction Co., Inc. et al.

Argued December 15, 1939.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John E. Evans, Sr.,* of *Margiotti, Pugliese, Evans & Buckley,* for appellant.

*J. Roy Dickie,* with him *H. A. Robinson,* of *Dickie, Robinson & McCamey,* for appellee.

OPINION BY BALDRIGE, J., March 2, 1940:

Laura Speca and Tito Speca, her husband, instituted attachment execution proceedings against the Bucci Construction Company, Inc., defendant, and the American Casualty Company of Reading, garnishee. The court below, at the close of the testimony, directed the jury to return a verdict in favor of the garnishee. This appeal is by Laura Speca only, from the refusal of the court below to enter judgment n. o. v. for the plaintiffs.

It was stipulated of record that our decision in this case will apply and govern the claim of Tito Speca, the other plaintiff, with the same force and effect as though he had appealed.

The facts may be stated as follows: On August 9, 1935, this appellant was riding in an automobile driven by her husband in a southerly direction on a public highway, when they had an accident in which the defendant's Ford truck was involved. Suit was instituted by the plaintiffs against the defendant corporation and notice thereof was given to the garnishee. The garnishee denied liability and declined to take any part in the trial. The appellant and her husband obtained judgments. These present proceedings followed.

At the trial the plaintiffs introduced in evidence a policy of insurance issued by the garnishee, February 14, 1935, to the Bucci Construction Company, covering the insured for damages on account of bodily injury by reason of the ownership and maintenance of the Ford truck; service of notice of the accident; the record of the trespass case; answers by the garnishee to certain interrogatories, and rested their case.

The defense set up was that the policy was issued in

consideration of the premium and of statements set forth in the declarations attached thereto. The policy contains, inter alia, the following:

## "DECLARATIONS

\* \* \* \* \* \* \* \*

"6. None of the automobiles described herein will be used to furnish motive power to any trailer or other vehicle used as a trailer not itself equipped with motive power, except as follows: No Exceptions.

\* \* \* \* \* \* \* \*

"V. EXCLUSIONS. This policy does not insure the Assured ...... (d) against loss of any kind resulting from the ownership, maintenance or use of any automobile or trailer described herein; ...... (5) for towing or propelling a trailer unless such privilege is endorsed hereon or unless such trailer is also insured by the Company; ......"

The garnishee contends that the truck of the insured was, at the time of the accident, towing a trailer which was not insured and the injuries sustained by reason of the accident are, therefore, not within the coverage of the policy.

The defendant called Ralph Bucci, the president of the defendant corporation, who testified that on the date of the accident he had purchased this vehicle, which operated on two wheels 18 inches high, with a body about two feet square. He "imagined" it weighed about 80 or 90 pounds. Attached to the front part was a bar or tongue, so that it could be coupled to the rear of the truck.

Joseph Bucci, son of the defendant and the driver of the truck, stated that this vehicle was an automobile trailer, weighing about 800 pounds; the body or bed was made of steel and was about 6 feet by 4 feet; it was equipped with two 30-inch wheels with pneumatic tires; and the trailer was attached to the rear of the truck by a tongue extending out from the front of the trailer.

There was also testimony by Pete Police, employed by the defendant as a helper on the truck, two policemen and other disinterested witnesses who corroborated Joseph Bucci in many particulars as to the size and character of this trailer. Several of these witnesses who saw the collision said the trailer was swaying as the truck was being driven along and that it collided with the front of the car in which plaintiff was riding. The insurance company takes the position that it is immaterial whether the truck, as the appellant contends, or the trailer, as it claims, was the immediate cause of the accident, as in either event it is not liable. We agree with that view.

In *Coolidge v. Standard Accident Insurance Company*, (Cal.) 300 Pac. 885, 888, the terms of the policy were similar to those of the one before us, and the court held that the defendant's exemption from liability did not depend upon the attached trailer becoming the cause of the accident or even contributing thereto. "The very fact that the trailer was being towed at the time of the accident relieved the defendant from liability according to the specific terms of the insurance policy." To the same effect are *Adams v. Maryland Casualty Company*, (Miss.) 139 So. 453, and *United States Fidelity & Guaranty Co. v. Bachmann et al.*, 10 N. Y. Supp. (2d) 704.

The appellant asserts that this vehicle, and another like it that had been loaded on the bed of the truck, were purchased on the day of the accident for use in the insured's business and were being transported as freight, and, therefore, the insurance company, under the terms of the policy, is liable.

In support of this position she relies on *Fuller v. Palazzolo et al.*, 329 Pa. 93, 197 A. 225. In that case, Palazzolo was the owner of truck-tractors and employed drivers to operate them in delivering trucks to various destinations for manufacturing plants, including Fruehauf Trailer Company, one of the defendants. The

negligence alleged there was that the truck had defective brakes, travelled at an unlawful speed, and that no brakes were on the semi-trailer which was being towed. The accident was due to the brakes on the truck failing to operate. The Fruehauf Trailer Company was held not liable as Palazzolo was an independent contractor. The court, in its opinion, said that a trailer being towed, as that one was, is freight, but that comment had no bearing on the decision. We do not find that this case aids us in the disposition of the one we are considering. We therefore conclude that there is no merit to that contention.

The appellant takes the further position that, under the terms of the policy and the proof offered, she was entitled to recover as a matter of law, as the vehicle being towed or propelled was not a "trailer" but a "semi-trailer."

The Act of May 1, 1929, P. L. 905, Article I, section 102 (75 PS sec. 2) describes a "semi-trailer and a "trailer" as follows:

" 'Semi-Trailer.'—Every vehicle of the trailer type so designed and used in conjunction with a motor vehicle that some part of its own weight and that of its own load rests upon or is carried by another vehicle."

" 'Trailer.'—Every vehicle without motive power, designed to carry property or passengers wholly on its own structure, and to be drawn by a motor vehicle."

The evidence discloses beyond question that none of the weight of the trailer (it had no load) rested upon or was carried by the truck, and therefore it does not come under the definition of "semi-trailer." From the description given of the vehicle it clearly appears that it is a "trailer" within the meaning of both the statute and the policy.

The appellant has cited cases from outside jurisdictions where a disabled automobile, or a buggy, or a lorry was being towed, but in none of them was a trailer involved, as in the instant case. In *Poole v.*

*Travelers Insurance Co. et al.,* (Fla.) 179 So. 138, the Florida statute, which was being construed, is entirely different from ours. It provides that a "trailer" shall include all four-wheeled vehicles, and a "semi-trailer" all two-wheeled vehicles coupled to or drawn by a motor vehicle.

The appellant argues also that, even though this vehicle is held to be a trailer, she made out a prima facie case, and, as the garnishee relied upon oral testimony, the case should have been submitted to the jury to pass upon the credibility of the witnesses and determine whether the plaintiffs were entitled to recover. We agree with the appellant that the general rule is that if a defendant relies upon a substantive defense reserved in an insurance policy to relieve him of the liability generally assumed in the policy, the defense becomes an affirmative one and the defendant's duty is to go forward with evidence in support of what he affirms, and in that event the case is for the jury: *Zenner v. Goetz (Travelers Indemnity Co.)* 324 Pa. 432, 188 A. 124.

Here the rights of the appellant are derivative through, and can rise no higher than those of the Bucci Company, in whose shoes she stands. If that company had paid the judgment and sued the garnishee, the insurance company, under the evidence given at the trial by the president of the Bucci Company, and its agents who were in the truck at the time of the accident, undoubtedly there could have been no recovery as under their testimony the type and character of the vehicle being towed was that of a trailer.

If this insured could not recover from the insurance company, under the terms of the policy, the appellant could not, as her rights as an attaching creditor do not rise higher than those of the insured: *Cameron v. Berger et al.,* 132 Pa. Superior Ct. 484, 490, 1 A. 2d 529. See, also, *Laroche v. F. B. Mut. Automobile Ins. Co.,* 335 Pa. 478, 7 A. 2d 361.

We find no fault with the court's action in directing a verdict for the garnishee.

Judgment affirmed.