### ASSOCIATED INDEMNITY CORPORATION v. DAVIS et al.

### No. 551.

District Court, M. D. Pennsylvania.

May 27, 1942.

Bailey & Rupp, John H. Moody and Walter H. Compton, all of Harrisburg, Pa., for plaintiff.

Elmer E. Harter, Jr., and Willis F. Daniels, both of Harrisburg, Pa., for defendant Harry R. Davis, Jr., and others.

David Putney, of Harrisburg, Pa., for defendant Eugene Pat Maley and others.

F. Brewster Wickersham, of Harrisburg, Pa., for defendant John Brindle Anstine and others.

W. E. Shissler and Spencer G. Nauman, both of Harrisburg, Pa., for defendant Pennsylvania R. Co.

William H. Neely, of Harrisburg, Pa., for defendant Harry R. Davis, Sr.

JOHNSON, District Judge.

The Associated Indemnity Corporation, hereinafter called the plaintiff, instituted this action for a declaratory judgment on its liability on an automobile policy insuring Harry R. Davis, Sr., against liability for bodily injury and property damage arising from the use of a specified automobile. Inter alia, the insuring agreement obligated the plaintiff to defend suits brought against the insured seeking damages for bodily injury or injury to property. It also provided that the word "insured" included not only the named insured but also any other person using the automobile with the permission of the named insured provided it was being used for the purposes designated in the policy. Plaintiff seeks a declaration that it has no responsibility under its policy with respect to certain claims arising out of an accident hereinafter described nor any obligation to defend against the prosecution of those claims because of the alleged breach of one of the conditions in the policy requiring the assistance and cooperation of the insured. Answers to the complaint were filed by defendants, Harry R. Davis, Jr., the Maleys, and the Pennsylvania Railroad; and the case was tried by the court without a jury. At the trial some of the defendants moved to dismiss the action. Those motions will be disposed of in this opinion after the facts and history of the case have been related.

The issuance of the policy by the plaintiff was denied in the answers to the complaint and at the trial it was shown that the original policy of insurance had been lost. In lieu of this proof the plaintiff offered the testimony of Mr. Morrison, Assistant Manager of the New York office of the plaintiff company in charge of issuing policies in Pennsylvania at the time the alleged policy was issued to Harry R. Davis, Sr., together with the Daily Report consisting of a carbon copy of the data appearing on the first page of the policy in question. This record was prepared at the

time the policy was issued and was kept under Mr. Morrison's supervision. Mr. Morrison also testified that all policies issued by the Associated Indemnity Corporation in 1938 from the first of the year to November 1 had a certain identification number and contained the same provisions in the "Insuring Agreement", "Exclusions", and "Conditions" as a specimen policy bearing that serial number which was offered in evidence. The Daily Report and the specimen policy bearing the identification number on all policies issued during this period taken together set forth all the provisions contained in the policy issued to Harry R. Davis, Sr.

From this evidence it appeared that the Associated Indemnity Corporation on May 4, 1938, issued a combination policy to Harry R. Davis, Sr., for his Chrysler automobile. On October 29, 1938, Harry R. Davis, Jr., the son of the insured, accompanied by Eugene Pat Maley, John Brindle Anstine, Ned Loftin, and others whose names are not material, all of whom were students of the Harrisburg Academy, was driving this car to a football game. The automobile and a train owned and operated by defendant, Pennsylvania Railroad Company, collided at a place where highway route 222 crosses the tracks of the Pennsylvania Railroad Company at grade. Harry R. Davis, Jr., Eugene Pat Maley and John Brindle Anstine all suffered personal injuries.

### Proceedings in the State Courts.

Suit was instituted in the Court of Common Pleas of Dauphin County, Pennsylvania, by Eugene Pat Maley, by his parents as next friends and in their own right, against the Pennsylvania Railroad Company, Harry R. Davis, Sr., and Harry R. Davis, Jr., to recover damages for his injuries. Suit was also instituted in the same court by John Brindle Anstine, by his parents as next friends and in their own right, against the same defendants to recover for the injuries suffered by Anstine. At the time of the institution of the proceedings in this court Ned Loftin had not started suit, but he was alleged to be claiming damages for injuries sustained in the accident. Plaintiff retained William H. Neely, a member of the Dauphin County Bar, to represent the defendants, Harry R. Davis, Sr., and Harry R. Davis, Jr., in these cases. The appearance of Mr. Neely was duly entered in both cases. The Anstine case was listed for Trial on April 1, 1940, and the case was assigned to Judge Lesher. Mr.

Neely then asked the court for leave to withdraw his appearance for Harry R. Davis, Jr., setting forth as the reasons for his request certain facts concerning the non-cooperation of Harry R. Davis, Jr., in the preparation for the defense and his failure to appear at the trial the details of which constitute part of the issue in this proceeding for a declaratory judgment and will be hereinafter discussed. Permission was granted for Mr. Neely's withdrawal, and he prepared and served disclaimers of liability on the part of the Associated Indemnity Corporation for any judgment that might be recovered against Harry R. Davis, Jr. After Mr. Neely withdrew the case was continued at the request of counsel for the other defendant, the Pennsylvania Railroad Company.

The Anstine case was again called for trial on May 8, 1940, at which time Mr. Neely appeared and represented Harry R. Davis, Sr., until the court granted a compulsory nonsuit as to him. Mr. Willis F. Daniels, esquire, represented Harry R. Davis, Jr., and Amy W. Davis, his mother, guardian ad litem. A verdict in the sum of $7,860.80 was rendered on May 15, 1940, in favor of the Anstines. The verdict made no finding as to Harry R. Davis, Jr., and the court endeavored to mold the verdict from the bench to exclude him. On appeal the Supreme Court of Pennsylvania on June 30th, 1941, reversed the judgment and ordered a new trial in which the defendants should be the Pennsylvania Railroad Company and Harry R. Davis, Jr. Anstine v. Pennsylvania R. Co., 342 Pa. 423, 20 A.2d 774. On July 8th, 1940, Mr. Neely prepared additional disclaimers of liability on the part of the Associated Indemnity Corporation in regard to the claims of the other passengers involved in the accident insofar as Harry R. Davis, Jr., was concerned.

### Proceedings in the District Court.

On December 6, 1940, the Associated Indemnity Corporation filed a complaint in the form of a petition for a declaratory judgment pursuant to 28 U.S.C.A. § 400 asking the Court to adjudge that it was not obligated to pay any claims against Harry R. Davis, Jr., arising out of the accident on October 29, 1938, or to defend him against any such claims on the ground that he had violated the conditions of the policy by failing to render the assistance and cooperation required. The facts alleged in the complaint constituting the

lack of cooperation on the part of Harry R. Davis, Jr., were largely denied in the answers filed by the several defendants. A trial without a jury was had on these issues. Upon motion of plaintiff's attorneys the case was discontinued as to defendant Willis F. Daniels. The Pennsylvania Railroad Company and Harry R. Davis, Jr., moved to dismiss the complaint assigning as reasons: (1) Another court of competent jurisdiction, namely, the Court of Common Pleas of Dauphin County, had taken jurisdiction of the subject-matter and would determine the same questions of law and fact as are raised in this proceeding; (2) The action for a declaratory judgment has become moot because of the decision of the Supreme Court of Pennsylvania directing a retrial of the Anstine case. This motion will be disposed of before going into the merits of the petition for a declaratory judgment.

■■ Many cases have held that a controversy between an automobile insurer and the insured regarding the extent of the insurer's liability under its policy to persons injured by the insured and the duty to defend actions against the insured for damages involves an "actual controversy" in the constitutional and statutory sense which will support a proceeding for a declaratory judgment. Ætna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Maryland Casualty Co. v. Consumers Finance Service, Inc., of Pennsylvania et al., 3 Cir., 101 F.2d 514; Maryland Casualty Co. v. United Corporation of Massachusetts et al., 1 Cir., 111 F.2d 443; United States Fidelity & Guaranty Co. v. Koch, 3 Cir., 102 F.2d 288; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826. The injured person as well as the insured is a proper party to the suit for a declaratory judgment. Maryland Casualty Co. v. Pacific Coal & Oil Co., supra; Maryland Casualty Co. v. Consumers Finance Service, Inc., supra; United States Fidelity & Guaranty Co. v. Koch, supra; Central Surety & Ins. Corporation v. Caswell, 5 Cir., 91 F.2d 607. It is not necessary that the injured person have a judgment against the insured prior to the commencement of the proceeding for a declaratory judgment.

■ The remedy of a declaratory judgment may be refused "if it is being sought merely to determine issues involved in cases already pending". Maryland Casualty Co. v. Consumers Finance Service, supra, [101 F.2d 515]; United States Fidelity & Guaranty Co. v. Koch, supra. "It may not be refused, however, merely on the ground that another remedy is available * * * or because of the pendency of another suit, if the controversy between the parties will not necessarily be determined in that suit." Maryland Casualty Co. v. Consumers Finance Service, supra; Columbian Nat. Life Ins. Co. v. Foulke, 8 Cir., 89 F.2d 261. In United States Fidelity & Guaranty Co. v. Koch, supra, the Court quoted with approval the following language from Borchard, Declaratory Judgments and Insurance Litigation (Address before the Section of Insurance Law, American Bar Association, Cleveland, Ohio, July 26, 1938) 15: "The liability under the policy and the liability for negligence are indeed two separate transactions." The suit by the Anstines against the Davises and the Pennsylvania Railroad Company in the Court of Common Pleas of Dauphin County involves a determination of the question of the liability of the defendants in that suit for their alleged negligence. The Associated Indemnity Corporation's duty to defend or to indemnify for any judgments recovered against the Davises will not be adjudicated in that proceeding. "The company is, therefore, entitled to have the extent of the coverage of its policy declared in the present proceeding." Maryland Casualty Co. v. Consumers Finance Service, supra.

■ The second reason in support of the motion to dismiss—that the action has become moot because of the decision of the Supreme Court of Pennsylvania, Anstine v. Pennsylvania R. Co., 342 Pa. 423, 20 A.2d 774, directing a new trial of the Anstine case in the Court of Common Pleas of Dauphin County is likewise without merit. The issue in the present proceeding is, whether the plaintiff may be declared to be relieved from its obligations to defend and indemnify by what occurred prior to and including April 1, 1940, the date upon which plaintiff's attorney was permitted to withdraw his appearance for Harry R. Davis, Jr. That question will not be litigated in a subsequent trial of the negligence action in the Court of Common Pleas of Dauphin County.

### Finding of Fact.

The following are the facts on the issue of the cooperation of Harry R. Davis,

Jr., with the plaintiff as they are admitted in the pleadings and found from the proof at the trial. On October 29, 1938, Harry R. Davis, Jr., with the permission of his father, Harry R. Davis, Sr., was driving the automobile covered by the policy in question when it was involved in a collision with a Pennsylvania Railroad train. Harry R. Davis, Jr., and other passengers were injured. Davis, Jr., was taken to a hospital in Lancaster. C. C. Norton, investigator for the Wilson Adjustment Bureau acting on behalf of the Associated Indemnity Corporation, called upon Davis, Jr., on four occasions while he was in the hospital to obtain statement from him concerning the accident. On October 31, 1938, he was refused an audience by the nurse. On the second and third visits, on November 4th and 14th, he was unable to procure any statements although he informed the boy that he represented the insurance carrier on his father's car. The fourth visit was made on December 6, 1938, at which time Mr. Norton was accompanied by the father, Harry R. Davis, Sr., who assisted him in procuring a statement of what happened. Mr. Neely was retained by the plaintiff to represent the Davises in the suits in Dauphin County, and he entered his appearance in the Anstine case in January, 1939. From time to time thereafter Mr. Neely had conferences with Harry R. Davis, Sr., in connection with the preparation of the Anstine case for trial. Harry R. Davis, Sr., and his wife, had separated and the son, Harry R. Davis, Jr., was living with his mother, Amy W. Davis. The Anstine case was listed for trial the first time in January, 1940. In a letter addressed to Harry R. Davis, Sr., dated January. 17, 1940, Mr. Neely notified him that it would be necessary for him and his son to call at his office for the preparation of the case for trial.

On January 23, 1940, Mr. Neely wrote to Harry R. Davis, Jr., addressing the letter to his home at 1821 Zarker Street, informing him that he represented the insurance company carrying the insurance on his father and himself and asking him to consult with him and cooperate in preparing the defense, as the case would probably be called for trial on January 29th or shortly thereafter. Harry R. Davis, Jr., did not come to the office in response to the letter or explain his failure to do so. The case was continued by agreement between counsel for the Anstines and the Pennsylvania Railroad Company on Janu-

ary 24, 1940. The same day Mr. Neely called Mr. Daniels, a member of the Dauphin County Bar, who had been represented as being counsel for Harry R. Davis, Jr., on the telephone and discussed the appointment of a guardian ad litem for Harry R. Davis, Jr. It was agreed that Amy W. Davis, his mother, should be appointed and this was done. In a conversation with Mr. Daniels in the Court House at Harrisburg on February 8, 1940, Mr. Neely informed Mr. Daniels that he was having difficulty in getting an interview with the Davis boy and that he would appreciate it if Mr. Daniels would have him get in touch with him. Davis, Jr., did not get in touch with Mr. Neely as a result of this conversation. On February 14, 1940, Mr. Neely wrote a letter to Mrs. Davis informing her that she had been appointed guardian ad litem for her son and requesting her to have her son come to his office for a conference in preparation for the trial on April 1. Neither the mother nor the son communicated with Mr. Neely nor came to his. office as a result of this letter.

On February 28, 1940, Mr. Norton, the investigator, was directed by Mr. Neely to visit the home of Amy W. Davis and her son to solicit their assistance in procuring the statements of various witnesses including Coach Miller who had been in charge of the caravan on the day of the accident. Mr. Norton explained to Mrs. Davis that he represented the insurance carrier on the car driven by her son and pointed out the necessity of her son's appearance and cooperation at the trial. Mrs. Davis referred him to Mr. Daniels. Mr. Norton reported this conversation to Mr. Neely who on the following day, February 29, called Mr. Daniels by telephone and told him what he had done in regard to having Mr. Norton endeavor to have the Davis boy assist in getting statements from witnesses at the Harrisburg Academy.

On March 11, 1940, Mr. Neely again wrote Mrs. Davis, advising her that the case was listed for trial on April 1 and that it would be necessary for her son to attend the trial in person and that if Davis, Jr., persisted in refusing to consult with him he would have to withdraw from his defense. Mr. Neely's letter stated that if it were not convenient for them to come to his office he would go to their house if they would fix the time. On the same date Mr. Neely addressed a letter to Harry R. Davis, Jr., informing him that the case was listed for

trial on April 1 and that his presence at the trial and cooperation in the preparation of the defense was required by the terms of his father's insurance policy. This letter stated that Mr. Neely would not defend him if he persisted in refusing to consult with him and that he would come out to see him at his home if it were inconvenient for him to come to Mr. Neely's office. Mr. Neely also wrote a letter to Davis, Sr., on the same date indicating that he had been unable to secure an interview with Davis, Jr. Copies of these letters were sent to Mr. Daniels. In response to these letters neither Mrs. Davis nor her son came to the office nor did they ask Mr. Neely to come to their home. No explanation was given of their conduct.

On March 26, 1940, Mr. Neely had a conversation with Mr. Daniels regarding the failure of Davis, Jr., to consult with him. Mr. Daniels stated that he would try to help in the situation. As a result of this conversation neither the mother nor the son came to Mr. Neely's office.

On April 1, the case was called for trial. About 9:30 that morning Mr. Norton called at the residence of the Davis boy but no one answered the door. The case was assigned for trial in court room No. 4. Neither Mrs. Davis nor Harry R. Davis, Jr., made themselves known to Mr. Neely, and apparently neither of them was in Court. Assigning all the foregoing details as reasons Mr. Neely moved for leave to withdraw his appearance for Harry R. Davis, Jr. The court granted Mr. Neely permission to withdraw his appearance. Shortly thereafter Mr. Neely prepared disclaimers which were served upon Amy W. Davis and her son by Mr. Norton about 3:30 P. M. After Mr. Neely withdrew the case was continued at the request of counsel for the Pennsylvania Railroad Company and the case was later tried in May, 1940. In a letter dated April 11, 1940, addressed to Mr. Neely, Mrs. Davis apologized for her lack of courtesy and cooperation and stated that both she and her son would give him every assistance in preparing the case for trial in May. Three weeks later the case was tried and Mr. Neely represented only Harry R. Davis, Sr. The defense of Davis, Jr., was conducted by Mr. Daniels.

██ Under the heading of "Conditions" the policy in question contained the following provisions: "7. Assistance and Cooperation of the Insured: The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. * * *"

The policy contained the usual omnibus clause providing that "The unqualified word 'insured' wherever used in Coverages A and B and in other parts of this policy, when applicable to these coverages, includes not only the named insured but also any person while using the automobile. * * *" In Appleman, Automobile Liability Insurance, 108, it is stated: "It is also clear that all conditions precedent, as well as exclusions, limit the coverage of the omnibus clause, and if such third party operator fails to comply with the policy conditions no coverage is afforded." Slavens v. Standard Acc. Ins. Co. of Detroit, Mich., 9 Cir., 27 F.2d 859; Clements v. Preferred Acc. Ins. Co. of New York, 8 Cir., 41 F.2d 470, 76 A.L.R. 17. The duty of the plaintiff to indemnify Harry R. Davis, Jr., the additional insured under the terms of the policy, was dependent upon his compliance with the conditions of the policy.

██ The cooperation clause constitutes a material condition of the policy. An insurer will not be relieved by showing a mere harmless and technical noncompliance with this condition. Dougherty v. Wood, 105 Pa.Super. 1, 158 A. 203; McClellan v. Madonti, 313 Pa. 515, 169 A. 760. The breach must be one which results in "substantial prejudice and injury to its position". Conroy v. Commercial Cas. Ins. Co., 292 Pa. 219, 140 A. 905, 907; Cameron v. Berger, 336 Pa. 229, 233, 7 A.2d 293. The insured must cooperate not only in the preliminary investigation of the accident but also after suits have been instituted. Cameron v. Berger, supra. The refusal of Harry R. Davis, Jr., to consult with the attorney retained by the plaintiff to defend him and his failure to attend the trial after having been frequently requested to do so constituted a substantial breach of the condition in the policy requiring his cooperation prejudicial to the plaintiff and discharged the plaintiff from the duty of defending him or indemnifying him against any claims arising from the accident on October 29, 1938. Cameron v. Berger, supra; Bachman v. Monte, 326 Pa. 289, 192 A. 485.

124

Now, May 27th, 1942, it is ordered that the plaintiff is not obligated under the policy issued to Harry R. Davis, Sr., on May 4, 1938, to defend or pay any claims against Harry R. Davis, Jr., asserted by any of the defendants herein, arising from the accident of October 29, 1938; and it is further ordered that the plaintiff shall recover the costs of this proceeding.